PEARSON, MJ

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAWRENCE THOMPSON, | ) | CASE NO. 3:07-CV-03550 |
| | ) | |
| Petitioner, | ) | JUDGE GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE PEARSON |
| | ) | |
| JESSE WILLIAMS, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## I.  Introduction

Before the Magistrate Judge is Lawrence Thompson's ("Thompson" or "Petitioner")

petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]  ECF No. 1.  Thompson

is incarcerated at the Allen Correctional Institution serving an aggregate sentence of twenty years

imposed for a conviction on five counts of drug trafficking and two counts of permitting drug

abuse.  *See* www.drc.oh.gov/ (website of the Ohio Department of Rehabilitation and Correction

for current status of and basis for Thompson's incarceration).

Thompson contends that he is entitled to the writ because the trial court's sentence

violated his right to due process and was cruel and unusual.  ECF No. 1 at 6-9.  Specifically,

Thompson asks the Court to "chang[e] his [twenty-year] sentence to a 4-year. sentence for each

---

[1]  Pursuant to General Order 2008-17, this case was reassigned to the docket of the
undersigned Magistrate Judge.  *See* non-document docket entry dated September 3, 2008.

(3:07-CV-03550)

count, run concurrently for a net of 4 years." ECF No. 1 at 16.  Warden Williams

("Respondent") acknowledges having custody of Thompson as a result of his conviction but

asserts that Thompson's petition should be dismissed because the state court decisions were not

contrary to, or an unreasonable application of, clearly established federal law as determined by

the Supreme Court of the United States.  ECF No. 6 at 23, 29-30.  In his response, Thompson

maintains that Respondent's analysis is incorrect and that his petition shows the state court

decisions constituted an unreasonable application of established Supreme Court precedent.  ECF

No. 7 at 28.

Having reviewed the record and applicable law, the Court finds that each of Thompson's

Grounds for Relief lack merit.  Accordingly, the undersigned Magistrate Judge recommends

dismissing Thompson's habeas corpus petition.

## II.  Factual and Procedural History

### A.  Underlying Offenses, Plea, and Sentencing

The Allen County Court of Appeals, Third Appellate District ("State Court of Appeals")

reviewed Thompson's case on direct appeal.[2]  The underlying facts are as follows:[3]

> The defendant-appellant, Lawrence W. Thompson, appeals the judgment of the Allen
> County Common Please Court sentencing him to an aggregate prison term of 20
> years.

---

[2] Facts found by the state appeals court on its review of the trial record are presumed correct by a federal court reviewing a petition for a writ of habeas corpus. *Brumley v. Wingard,* 269 F.3d 629, 637 (6th Cir. 2001).

[3] This recitation of facts is derived from the decision of the State Court of Appeals in Thompson's direct appeal of his re-sentencing.  ECF No. 6-3 at 2-3 (Ex. 23).

-2-

(3:07-CV-03550)

On September 16, 2004, the Allen County Grand Jury indicted Thompson on five counts of trafficking in cocaine, violations of R.C. 2925.03(A) and (C)(4)(d), third-degree felonies, and two counts of permitting drug abuse, violations of R.C. 2925.13(A) and (C)(3), fifth-degree felonies. The charges resulted after Thompson sold cocaine to confidential informants on five occasions.

Thompson initially pled not guilty to each offense and filed a motion to suppress. After the suppression motion was denied, Thompson withdrew his previously tendered pleas of not guilty and pled no contest to the indictment. At sentencing, the trial court imposed five four-year prison terms on the drug trafficking offenses and two nine-month prison terms on the permitting drug abuse offenses. The court ordered the four-year terms to be served consecutively and the nine-month terms to be served concurrently for an aggregate sentence of 20 years.

Thompson appealed the trial court's decision to this Court, challenging the judgment on the suppression motion and his sentence. We affirmed the judgment on the suppression motion, but vacated the sentence and remanded the case for a new sentencing hearing pursuant to *State v. Foster*, 109 Ohio St. 3d 1, 2006-Ohio-856, 845 N.E.2d 470. *State v. Thompson*, 3rd Dist. No. 1-05-34, 2006-Ohio-2004, appeal not allowed by 110 Ohio St.3d 1467, 2006-Ohio-4288, 852 N.E.2d 1215. At the new sentencing hearing, the trial court imposed an identical sentence. Thompson appeals his sentence, asserting two assignments of error for our review.

ECF No. 6-3 at 2-3 (Ex. 23).[4]

**B.  Direct Appeal**

On July 25, 2005, Thompson, through counsel, presented three assignments of error in his

appellate brief to the State Court of Appeals:

    I.       The trial Court erred in sentencing the Defendant by imposing consecutive sentences, in violation of R.C. §2929.14(E)(4).[]

    II.      Sentencing in this case violated the *Apprendi* doctrine as explained in *Blakely v. Washington* and was therefore unconstitutional.

---

[4] The *Foster* decision (discussed below) severed the findings of fact requirement from Ohio sentencing law. After *Foster*, judges in Ohio are no longer required to justify greater than minimum or consecutive sentences; imposing these types of sentences is discretionary.

(3:07-CV-03550)

    III.    The Trial Court should have sustained the defense motion to suppress statements.

ECF No. 6-2 at 75 (Ex. 9).  The State Court of Appeals affirmed the trial court's ruling denying Thompson's motion to suppress, but vacated his sentence and remanded for "further proceedings consistent with *Foster*."  ECF No. 6-2 at 155-56 (Ex. 13).  Thompson, again through counsel, appealed to the Supreme Court of Ohio on May 24, 2006, and set forth two propositions of law:

    Proposition of Law #1:    R.C. §2929.14 is unconstitutional insofar as it authorizes fact finding by a Trial Court without the right to a jury when those facts are necessary for imposition of consecutive sentences.

    Proposition of Law #2:    The Trial Court should have sustained the defense motion to suppress statements.

ECF No. 6-2 at 161 (Ex. 15).  On August 23, 2006, the Supreme Court of Ohio "decline[d] jurisdiction and dismisse[d] the appeal as not involving any substantial constitutional question."  ECF No. 6-2 at 182 (Ex. 16).

    **C.  Re-sentencing and Subsequent Appeals**

Upon remand after the reversal by the State Court of Appeals, the trial court re-sentenced Thompson on July 21, 2006, to the same aggregate twenty year sentence.  ECF No. 6-2 at 187-91 (Ex. 18).  Thompson, through counsel, filed a timely notice of appeal on July 26, 2006.  ECF No. 6, Ex. 19 at 1.  Thompson set forth two assignments of error in his brief to the State Court of Appeals:

    I.    The Trial Court imposed consecutive sentences pursuant to an ex post facto judicially-created sentencing law, in violation of his right to freedom from such enactments and in violation of Due Process.

    II.    The sentence in this case was cruel and unusual, in violation of the Ohio Constitution and in violation of the United States Constitution, as egregiously

(3:07-CV-03550)

disproportionate to similar sentences imposed for similar offenders.

ECF No. 6-2 at 201 (Ex. 20).[5]  On February 26, 2007, the State Court of Appeals affirmed the

trial court's sentence holding that "*Foster* does not offend constitutional notions of due process"

and that the sentence imposed did not violate "state or federal protections against cruel and

unusual punishments."  ECF No. 6-3 at 5 & 9 (Ex. 23).

On March 19, 2007, Thompson, again through counsel, filed a timely notice of appeal

from the state appellate court judgment.  ECF No. 6-3 at 11 (Ex. 24).  Thompson asserted the

following two propositions of law in his brief to the Supreme Court of Ohio:

> Proposition of Law #1:  Ohio Sentencing Law is Unconstitutional for Violation of
> the Right to Due Process.
>
> Proposition of Law #2:  The sentence in this case was cruel and unusual, in violation
> of the Ohio Constitution and in violation of the United States Constitution, as
> egregiously disproportionate to similar sentences imposed for similar offenders.

ECF No. 6-3 at 14 (Ex. 25).  On June 20, 2007, the Ohio Supreme Court declined jurisdiction to

hear the case and dismissed the appeal as not involving any substantial constitutional question.

ECF No. 6-3 at 40 (Ex. 26).  Thompson did not appeal this decision to the United States

Supreme Court.

### D.  **Motion to Withdraw Guilty Plea**

On September 7, 2007, Thompson filed a *pro se* motion to withdraw his guilty plea

pursuant to Ohio R. Crim. P. 32.1.  ECF No. 6-3 at 41 (Ex. 27).  On September 11, 2007, the trial

court denied the motion without an evidentiary hearing.  ECF No. 6-3 at 68 (Ex. 28).  Thompson

---

[5]  Thompson's assignments of error are presented exactly as written in his brief to the
State Court of Appeals.

-5-

(3:07-CV-03550)

did not further appeal the trial court's denial.

### E.  Federal Habeas Petition

Thompson, through counsel, filed his petition for a writ of habeas corpus on November

14, 2007, presenting three grounds for relief:

> GROUND ONE:  The sentence imposed in this case, of a non-minimum, consecutive
> sentence for a person with no prior felony convictions, was unconstitutional for
> violation of his rights of presentment to a grand jury, to trial by jury and to proof
> beyond a reasonable doubt of essential facts without which such sentence could not
> be imposed.
>
> GROUND TWO:  The remedy applied in Ohio to Mr. Thompson of removing
> statutory presumptions as a cure for an admitted constitutional defect in the
> sentencing statute violated his right to due process by creating the equivalent of an
> ex post facto penalty.
>
> GROUND THREE:  The sentence in this case was cruel and unusual, in violation of
> the Ohio Constitution and in violation of the United States Constitution, as
> egregiously disproportionate to similar sentences imposed for similar offenders.

ECF No. 1 at 6-9.  Respondent contends that the Court should dismiss Thompson's petition

because the state court decisions were not contrary to, or an unreasonable application of, clearly

established federal law as determined by the Supreme Court of the United States.  ECF No. 6 at

23, 29-30.  In his traverse, Thompson counters that Respondent's analysis is incorrect: the Allen

County trial court violated his right to due process, and his sentence was cruel and unusual.  ECF

No. 7 at 28.

### III.  Procedural Gateways to Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposed

procedural rules designed to permit federal judicial resources to focus on only the most

compelling habeas corpus petitions. A petitioner must successfully pass through several

(3:07-CV-03550)

procedural gateways to qualify for federal review.  Those gateways and their application to the

instant petition are provided below.

### A.  **Jurisdiction**

Writs of habeas corpus may be granted by a district court within its respective

jurisdiction:

> Where an application for a writ of habeas corpus is made by a person in custody
> under the judgment and sentence of a State court which contains two or more Federal
> judicial districts, the application may be filed in the district court for the district
> within which the State court was held which convicted and sentenced him and each
> of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a) and (d).

Because the Court of Common Pleas in Allen County, Ohio, which is within the Northern

District of Ohio, convicted Thompson, the Court has jurisdiction over his petition.

### B.  **Statute of Limitations**

AEDPA imposes a one-year statute of limitations period for federal habeas petitions filed

by prisoners challenging state-court convictions after its April 24, 1996 effective date.  28 U.S.C.

§ 2244(d); *McCray v. Vasbinder,* 499 F.3d 568, 571 (6th Cir. 2007).  The one-year period begins

to run on the date judgment became final.  28 U.S.C. § 2244(d)(1); *Jimenez v. Quarterman*, 129

S.Ct. 681, 685-86 (2009).  As this one-year period is not a jurisdictional bar, a petitioner may

have an untimely petition reviewed if the petitioner establishes that the doctrine of equitable

tolling applies.  *Dunlap v. United States*, 250 F.3d 1001, 1003 (6th Cir. 2001).

Respondent has not asserted that Thompson's petition is time-barred.  Upon independent

review of the record, the undersigned finds that Thompson's petition is timely filed pursuant to

-7-

(3:07-CV-03550)

28 U.S.C. § 2244(d).

### C.  Evidentiary Hearing

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances

when the factual basis of a claim has not been adequately developed in state court proceedings.

28 U.S.C. § 2254(e)(2).

There is no need for an evidentiary hearing in the instant case given that Thompson's

claims involve legal issues that can be resolved without additional factual inquiry.

### D.  Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all available state remedies or have no

remaining state remedies available before a federal court will review a petition for a writ of

habeas corpus.  28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004);

*Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief

remain available, then the petitioner has not exhausted all of his state remedies.  *Rust v. Zent*, 17

F3d 155, 160 (6th Cir. 1994).  If relief is no longer available in state court, however, exhaustion

can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented

to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether

cause and prejudice exist to excuse the failure to present the claim in the state courts." *Id.* at 160;

*see also Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).  The exhaustion requirement is

properly satisfied when the highest court in the state in which petitioner was convicted has been

given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v. Alexander*, 912

F.2d 878, 881 (6th Cir. 1990).

-8-

(3:07-CV-03550)

Thompson has no remaining state remedies for his claims, therefore, his claims have been exhausted.

**E.  Non-cognizability**

State prisoners are entitled to federal habeas corpus relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Claims for relief based on violations of state law are non-cognizable in a federal habeas proceeding, *i.e.*, a federal court cannot review claims of state law violations presented in a petition for habeas corpus relief.  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

Rulings by the state's highest court on matters of state law are binding on federal courts. *Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  Further, a federal court may not second-guess a state court's interpretation of its own procedural rules.  *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).  Thus, even if a state court errs in applying its own procedural default statute, the error is not cognizable in federal habeas review.  *Simpson v. Jones*, 238 F.3d 399, 406-07 (6th Cir. 2000).

Thompson's Grounds for Relief assert violations of the United States Constitution and are thus cognizable in this federal habeas proceeding.

**F.  Procedural Default**

Procedural default occurs when a petitioner fails to present his constitutional claims fairly to the highest state court in a federal constitutional context.  *See Anderson v. Harless*, 459 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971).  Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the

-9-

(3:07-CV-03550)

state proceeding due to respondent's failure to raise them there as required by state procedure."

*Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). When a petitioner:

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v Thompson*, 501 U.S. 722, 750 (1991).

Respondent has not asserted the defense of procedural default against any of the Grounds for Relief set forth in Thompson's petition thereby waiving the defense. The undersigned, upon independent review of the record, does not find that Thompson's Grounds for Relief are procedurally defaulted.

## IV.  Merit Review

### A.  Standard of Review

If a petitioner's claims successfully pass through the procedural gateways of time limitation, exhaustion, cognizability, and procedural default, then AEDPA governs the Court's review of a habeas corpus petition. In 1996, AEDPA altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus. As amended, 28 U.S.C. § 2254(d) provides:

> An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

-10-

(3:07-CV-03550)

28 U.S.C. § 2254(d); *see also Carey v. Muscadine*, 549 U.S. 70, 74 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-413 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a similar question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand. *Down v. Brigand*, 237 F.3d 722, 729-31 (6th Cir. 2001).  If a court fails to identify the correct legal principal at issue, the "unreasonable application of" clause does not apply.  *Id.* at 730.  "The central inquiry is whether the state court decision was objectively unreasonable and not simply erroneous or incorrect." *Harris v. Haeberlin*, 526 F.3d 903, 910 (6th Cir. 2008).  Therefore, "a reviewing court must be careful not to substitute its own judgment for that of the state court by

-11-

(3:07-CV-03550)

equating the more stringent standard of 'objectively unreasonable' with the more lax standard of 'clear error.'" *Id.*

"[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1).  The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence." *Id.*  "[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."

*Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

### B.  <u>Thompson's Grounds for Relief Lack Merit</u>

Thompson's first two grounds for relief essentially assert the same argument and rely upon the same facts: The State trial court's re-sentencing violated Thompson's right to due process pursuant to an *ex post facto* law.  Respondent denies this.[6]

For the reasons that follow, the undersigned finds that each of Thompson's Grounds for Relief lack merit.

---

[6] Several petitioners have presented essentially the same non-meritorious  arguments as those asserted by Thompson to other judges within this district.  *See, e.g., Watkins v. Williams*, 2008 WL 2484188 (N.D. Ohio June, 17, 2008) (admonishing petitioner's attorney for presenting the same non-meritorious argument without acknowledging prior adverse rulings) (Adams, J.); *Lyles v. Jeffreys*, 2008 WL 1886077 (N.D. Ohio Apr. 24, 2008) (Oliver, J.); *McGhee v. Konteh*, 2008 WL 320763 (N.D. Ohio Feb. 1, 2008) (Nugent, J.); *see also Kravochuck v. Shewalter*, 2009 WL 3208663 (N.D. Ohio Oct. 5, 2009) (Nugent, J.); *Torres v. Beightler*, 2009 WL 2705880 (N.D. Ohio Aug. 27, 2009) (Nugent, J.); *McKitrick v. Smith*, 2009 WL 1067321 (N.D. Ohio Apr. 21, 2009) (Gaughan, J.); *Sanchez v. Konteh*, 2009 WL 539710 (N.D. Ohio Mar. 4, 2009) (Gaughan, J.); *Smith v. Wilson*, 2008 WL 4758696 (N.D. Ohio Oct. 29, 2008) (Oliver,J.); *Pitts v. Warden*, 2008 WL 4758697 (N.D. Ohio Oct. 29, 2008) (Oliver, J.); *Wentling v. Moore*, 2008 WL 2778510 (N.D. Ohio July 14, 2008) (Boyko, J.)

(3:07-CV-03550)

### 1.  Thompson's Sentence does not Violate Due Process

In support of his position, Thompson argues that the Supreme Court of Ohio's decision in

*State v. Foster*, 109 Ohio St. 3d 1, 845 N.E.2d 470 (2006) resulted in a new sentencing law that

(after the fact) "redefined the potential penalty" for Thompson's criminal conduct to his

detriment.  ECF No. 7 at 15.

### a.  Thompson's Non-minimum Consecutive Sentences Are Constitutional

Until 2006, Ohio judges who sentenced a defendant to a greater than minimum sentence

or to consecutive sentences were required to make certain findings of fact sufficient to overcome

Ohio's presumption in favor of minimum and concurrent sentences.  *Foster*, 109 Ohio St.3d at

25.  The Ohio Supreme Court's decision in *Foster* severed the presumptions in favor of

minimum and concurrent sentences from the sentencing statutes as unconstitutional according to

*Blakely*, *Apprendi*, and *Booker*.  Because *Foster* severed the findings of fact requirement from

Ohio sentencing law, judges in Ohio state courts are no longer required to justify greater than

minimum or consecutive sentences; imposing these types of sentences is now discretionary.  The

*Foster* decision instructed sentencing courts as follows:

> Courts shall consider those portions of the sentencing code that are unaffected by
> today's decision and impose any sentence within the appropriate felony range. If an
> offender is sentenced to multiple prison terms, the court is not barred from requiring
> those terms to be served consecutively.

*Foster*, 109 Ohio St.3d at 30.

Thompson's claims in Grounds One and Two are rooted firmly in due process notions of

notice, foreseeablility, and the right to fair warning.  *See  Rogers v. Tennessee*, 532 U.S. 451, 459

-13-

(3:07-CV-03550)

(2001). Thompson argues that his re-sentencing pursuant to *Foster* violated his right to due process of law because he did not have "fair warning of a criminal prohibition." ECF No. 7 at 16 (*quoting Bouie v. City of Columbia*, 378 U.S. 347 (1963) (syllabus)). Relying on *Bouie v. City of Columbia*, 378 U.S. 347 (1963), Thompson states:

> The *Bouie* decision relied upon a principle that the judiciary cannot by interpretation of an existing and unambiguous law violate the right of an accused to freedom from an *ex post facto* law by judicial creation of that which the legislature could not create. The *Bouie* standard is whether the late action of the judiciary was unforeseeable at the time of the commission of the offense.

ECF No. 7 at 16. Thompson's reliance on *Bouie* is misplaced as discussed in more detail below. And, his argument is without merit because the State Court of Appeals' decision is neither contrary to, nor an unreasonable application of, clearly established federal law.[7]

*Bouie v. City of Columbia* involved defendants whose arrest arose from a civil rights sit-in at a drug store in Columbia, South Carolina. The South Carolina statute at issue criminalized entry onto land *after* the posting of notice from the owner or tenant prohibiting such entry. In *Bouie*, the defendants were prosecuted under this statute even though they had not been given prior notice that their entry to the drug store would be criminal. On appeal, the South Carolina

---

[7] The State Court of Appeals' denial of Thompson's appeal after his re-sentencing relied upon *State v. McGhee*, 2006 WL 2796275 (Ohio Ct. App. Oct. 2, 2006), in dismissing the due process argument. ECF No. 6-3 at 5 (Ex. 23). The *McGhee* Court held:

> Because McGhee knew the potential statutory sentence for committing a first degree felony, because he had notice that Ohio's sentencing statutes were subject to judicial scrutiny, and because McGhee was unlikely to amend his criminal behavior in light of a sentencing change, we cannot find the Ohio Supreme Court's holding in *Foster* violates federal notions of due process as established in *Bouie* and *Rogers*.

*McGhee*, 2006 WL 2796275 at *7.

-14-

(3:07-CV-03550)

Supreme Court re-interpreted the statute to penalize *remaining* on a property after notice had been given to leave in addition to notice given prior to entering the property.  The United States Supreme Court reversed finding that the South Carolina statute, being precise on its face had been "unforeseeably and retroactively expanded by judicial construction." *Bouie*, 378 U.S. at 352.  The Supreme Court agreed with the appellants that South Carolina had punished them for conduct that had not been criminal at the time committed.  Therefore, "[i]t follows that they have been deprived of liberty and property without due process of law in contravention of the Fourteenth Amendment." *Id.* at 363.

The relevant facts in *Bouie* are easily distinguishable from *Foster* and Thompson's case. First, *Foster* did not criminalize any conduct which had not been criminal prior to the decision. Nor did *Foster* increase the maximum penalty applicable to criminal conduct.  Instead, *Foster* severed those portions of Ohio's sentencing statute that required judicial findings of fact before a court could sentence a defendant to greater than minimum sentence or to consecutive sentences. *Bouie*, on the other hand, stands for the proposition that a court may only prosecute that behavior which was criminal when committed.  *Bouie* does not restrict how a defendant is sentenced after the criminal behavior at issue has occurred.

Second, Thompson has not successfully argued that the statute did not give him fair warning that his conduct constituted a crime.  Thompson was aware of the potential penalty associated with his criminal conduct before and after *Foster*.  The potential maximum sentencing ranges did not change for the crimes he committed nor did the prospect of the trial court's discretion to impose consecutive sentences for committing multiple (in this case, seven) felonies.

-15-

(3:07-CV-03550)

*See United States v. Duncan*, 400 F.3d 1297, 1307 (11th Cir. 2006) (*quoting Dobbert v. Florida,* 432 U.S. 282, 297 (1977)* ("[T]he old statute . . . clearly indicated [the State's] view of the severity of [the offense] and of the degree of punishment which the legislature wished to impose upon [offenders].")).

Moreover, the Sixth Circuit, in addressing such a claim, held that "when addressing ex post facto-due process concerns, questions of notice, foreseeability, and fair warning are paramount."  *United States v. Barton*, 455 F.3d 649, 655 (6th Cir. 2006).  In *Barton*, the Sixth Circuit found that because *Blakely* had been decided prior to the defendant Barton's conviction, it "would not have been a leap in logic to expect the Supreme Court to apply *Blakely*" to the federal sentencing guidelines in some manner and, therefore, due process was not violated.  *Id.* at 653-54.  Applying *Barton's* logic to the instant case, Thompson has not successfully argued that the trial court violated his due process rights because: 1) The statute gave him fair warning that his conduct constituted a crime; 2) Thompson was aware of the potential penalty associated with his criminal conduct before and after *Foster*; and 3) The potential maximum sentencing ranges did not change for the crimes he committed nor did the prospect of the trial court's discretion to impose consecutive sentences for committing two felonies.[8]  When Thompson violated the law for which he was sentenced, he bargained for a sentence that would not exceed the maximum penalty.  He received  no more than he bargained for.  *See Chontos v. Berguis*, --- F.3d ----, 2009

---

[8]  Prior to the ruling in *Foster*, Ohio trial court judges could impose greater than minimum and consecutive sentences, but Ohio law required judicial fact-finding in order to do so.  *Foster*, 109 Ohio St.3d at 25.  Now, Ohio judges have "full discretion" when imposing such sentences according to the ruling in *Foster*.  *Foster*, 109 Ohio St.3d at 30.

-16-

(3:07-CV-03550)

WL 3734675 at *3 (6th Cir. 2009) ("[t]he Sixth Amendment jury trial right simply ensures that

the defendant will never get *more* punishment than he bargained for when he did the crime; it

does not promise that he will receive anything less than that.") (emphasis original) (internal

citations omitted).  Therefore, Thompson had sufficient notice and fair warning of the potential

penalties that a judge could impose for the crimes he committed even following the Ohio

Supreme Court's decision in *Foster*.  *See Smith*, 2008 WL 4758696 at *14; *McGhee*, 2008 WL

320763 at *11.

       Regarding Thompson's objection to the imposition of consecutive sentences, the United

States Supreme Court recently addressed the issue of state trial judge imposed consecutive

sentences and the applicability of the Sixth Amendment in *Oregon v. Ice*, --- U.S. ----, 129 S.Ct.

711 (2009).  Thompson filed his traverse prior to the Supreme Court's decision in *Oregon v. Ice*.

The Court held in *Ice* "that allowing state judges to find facts when determining whether to

impose consecutive sentences does not violate the Sixth Amendment as interpreted by *Blakely*."

*Evans v. Hudson*, 575 F.3d 560, 563 (6th Cir. 2009) (*citing Ice*, --- U.S. ----, 129 S.Ct. at 714-

15)).  The Court's decision in *Ice* clarifies that when the trial judge imposed consecutive

sentences, Thompson's Sixth Amendment rights as interpreted by *Blakely* were not violated.

       Accordingly, the undersigned finds no violation of federal law.

**b. *Foster's* Revisions are Constitutional**

       Thompson also asks this Court to find that the Ohio "sentencing scheme" resembles and

parallels the sentencing law that the United States Supreme Court struck down in *Cunningham v.

California*, 549 U.S. 270 (2007), as opposed to the remedy fashioned in *United States v. Booker*,

-17-

(3:07-CV-03550)

543 U.S. 220 (2005).  ECF No. 7 at 19.  The Court declines to make such a finding.  In

*Cunningham*, the United States Supreme Court examined California's determinate sentencing

law (DSL), which provided a three-tiered sentencing scheme.  Under the DSL, California's trial

court judges were required to sentence a defendant to a middle term, unless the court found by

way of judicial factfinding, factors that supported raising or lowering the sentence to an upper or

lower term.  *Cunningham*, 549 U.S. at 277.

The Supreme Court's analysis reprinted below sets forth the factors distinguishing Ohio's

sentencing law from California's DSL:

> Ultimately, the [California Supreme Court] relied on an equation of California's DSL system to the post-*Booker* federal system. "The level of discretion available to a California judge in selecting which of the three available terms to impose," the court said, "appears comparable to the level of discretion that the high court has chosen to permit federal judges in post-*Booker* sentencing." 35 Cal.4th, at 1261, 29 Cal.Rptr.3d 740, 113 P.3d, at 548 . . . .

> The attempted comparison is unavailing. As earlier explained . . . this Court in *Booker* held the Federal Sentencing Guidelines incompatible with the Sixth Amendment because the Guidelines were "mandatory and imposed binding requirements on all sentencing judges." 543 U.S., at 233, 125 S.Ct. 738. "[M]erely advisory provisions," recommending but not requiring "the selection of particular sentences in response to differing sets of facts," all Members of the Court agreed, "would not implicate the Sixth Amendment." *Ibid.* To remedy the constitutional infirmity found in *Booker*, the Court's majority excised provisions that rendered the system mandatory, leaving the Guidelines in place as advisory only. *Id.*, at 245-246, 125 S.Ct. 738. . . .

> *California's DSL does not resemble the advisory system the Booker Court had in view*. Under California's system, judges are not free to exercise their "discretion to select a specific sentence within a defined range." *Booker*, 543 U.S., at 233, 125 S.Ct. 738. California's Legislature has adopted sentencing triads, three fixed sentences with no ranges between them. Cunningham's sentencing judge had no discretion to select a sentence within a range of 6 to 16 years. His instruction was to select 12 years, nothing less and nothing more, unless he found facts allowing the imposition of a sentence of 6 or 16 years. Factfinding to elevate a sentence from 12 to 16 years, our

-18-

(3:07-CV-03550)

decisions make plain, falls within the province of the jury employing a beyond-a-reasonable-doubt standard, not the bailiwick of a judgedetermining where the preponderance of the evidence lies.

Nevertheless, the [California Supreme Court] attempted to rescue the DSL's judicial factfinding authority by typing it simply a reasonableness constraint, equivalent to the constraint operative in the federal system post-*Booker*. See 35 Cal.4th, at 1261, 29 Cal.Rptr.3d 740, 113 P.3d, at 548 ("Because an aggravating factor under California law may include any factor that the judge reasonably deems relevant, the [DSL's] requirement that an upper term sentence be imposed only if an aggravating factor exists is comparable to *Booker's* requirement that a federal judge's sentencing decision not be unreasonable."). Reasonableness, however, is not, as the *Black* court would have it, the touchstone of Sixth Amendment analysis. The reasonableness requirement *Booker* anticipated for the federal system operates *within* the Sixth Amendment constraints delineated in our precedent, not as a substitute for those constraints. Because the DSL allocates to judges sole authority to find facts permitting the imposition of an upper term sentence, the system violates the Sixth Amendment. It is comforting, but beside the point, that California's system requires judge-determined DSL sentences to be reasonable. *Booker's* remedy for the Federal Guidelines, in short, is not a recipe for rendering our Sixth Amendment case law toothless.

To summarize: . . . [O]ur decisions from *Apprendi* to *Booker* point to the middle term specified in California's statutes, not the upper term, as the relevant statutory maximum. Because the DSL authorizes the judge, not the jury, to find the facts permitting an upper term sentence, the system cannot withstand measurement against our Sixth Amendment precedent.

*Cunningham*, 549 U.S. at 291-93 (footnotes omitted) (emphasis added). In sum, the United States Supreme Court found California's DSL sentencing structure unconstitutional. No such condemnation has been made of Ohio's post-*Foster* sentencing structure.

Ohio's sentencing laws post-*Foster* do not resemble or parallel California's DSL, nor do Ohio's laws require judicial factfinding when imposing consecutive sentences. *Foster* severed judicial factfinding from the Ohio statute and thus allows Ohio trial courts to "sentence defendants anywhere within prescribed ranges, using the statutory factors as discretionary

-19-

(3:07-CV-03550)

guidelines." *Lyles*, 2008 WL 1886077 at *12.  Thus, Thompson's post-*Foster* re-sentencing by

the state trial court did not violate, offend, or run afoul of his right to due process as did the

sentencing scheme of California's DSL.[9]

### c. Thompson's Sentence Did Not Require a New Indictment or Another Grand Jury Presentation

Lastly, without the support of persuasive legal authority, Thompson argues that *Foster*

violated his right to due process because he was denied the right to presentment to a grand jury,

to trial by jury, and to proof beyond a reasonable doubt of essential facts.  As discussed above,

Thompson was on notice and had fair warning before and after *Foster* that his criminal conduct

carried penalties that included the possibility of consecutive sentences.  Additionally, the

elements of the crime charged were unaffected by *Foster*; *Foster* severed only the required

judicial factfinding aspect of sentencing related to the crime charged.  Now, after *Foster*, instead

of requiring judicially found facts in order to apply consecutive sentences to Thompson, the trial

court's decision to impose consecutive sentences is discretionary.  Because the elements of the

crime are unchanged and the potential for consecutive sentences remained as it did pre-*Foster*, a

violation of the right to due process pursuant to an *ex post facto* law did not occur.[10]   The

---

[9] Since Ohio's *Foster* remedy parallels the remedy in *Booker* as opposed to *Cunningham*, the following cases support the Courts determination that no due process violation exists.  *See United States v. Barton*, 455 F.3d 649, 657 (6th Cir. 2006); *United States v. Rines*, 419 F.3d 1104, 1106 (10th Cir. 2006); *United States v. Duncan*, 400 F.3d 1297, 1306-08 (11th Cir. 2006); *United States v. Scroggins*, 411 F.3d 572, 575-78 (5th Cir. 2005); *United States v. Jamison*, 416 F.3d 538, 539 (7th Cir. 2005); *United States v. Dupas*, 417 F.3d 1064, 1068-69 (9th Cir. 2005).

[10] In *Rogers v. Tennessee*, 532 U.S. 451, the Supreme Court unequivocally stated that

As the text of the [Ex Post Facto] Clause makes clear, it is a limitation upon the

-20-

(3:07-CV-03550)

retroactive application of *Foster* to Thompson's re-sentencing, did not create a renewed right to another  trial by jury or another presentment to a grand jury with respect to those unchanged elements.  There has been no violation of Thompson's right to due process.

### 2.  Thompson's Sentence does not Constitute Cruel and Unusual Punishment

In Thompson's third Ground for Relief, he argues that his re-sentencing under *Foster* constitutes cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution because there is a lack of proportionality between his crime and punishment and the punishment of others convicted of the same crime.  Thompson claims that his sentence of twenty years consisting of five consecutive four-year prison terms "would shock the conscience of the community."  ECF No. 7 at 27.  Additionally, he argues that his sentence is greatly disproportionate compared to similarly situated offenders who committed similar offenses. Thompson's arguments are not well taken.

When analyzing an Eighth Amendment claim, the Sixth Circuit noted in *United States v. Marks* that "[t]he Supreme Court has determined that strict proportionality between a crime and its punishment is not required."  *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000) (*citing Harmelin v. Michigan*, 501 U.S. 957, 959-60, (1991)).  Rather, "[t]he Supreme Court has articulated a 'narrow proportionality principle' whereby it held that only 'extreme sentences that

---

powers of the Legislature, and does not of its own force apply to the Judicial Branch of the government . . . .  We have observed, however, that limitations on ex post facto judicial decision making are inherent in the notion of due process.

*Rogers*, 532 U.S. at 456.

(3:07-CV-03550)

are grossly disproportionate to the crime are prohibited.'" *United States v. Flowal*, 163 F.3d 956, 963 (6th Cir. 1998) (*quoting Harmelin*, 501 U.S. at 995-97)).  Upon implementing this "narrow proportionality principle," the Sixth Circuit has recognized that "only an extreme disparity between crime and sentence offends the Eighth Amendment."  *Marks*, 209 F.3d at 583.  Consequently, "[a] sentence within the maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (*citing United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)).

In Thompson's case, his seven felony offenses carried an aggregate potential maximum sentence of twenty-seven years.  ECF No. 6-3 at 5 (Ex. 23).  The trial court did not impose the maximum sentence for any of his felony offenses.  Instead, it sentenced Thompson to five consecutive four-year terms of imprisonment, for an aggregate of twenty years.  Based upon the narrow proportionality principle, Thompson's sentence is not "extreme" or "grossly disproportionate" to the offenses Thompson committed.

Thompson's argument that a lack of proportionality exists between his punishment and the punishment of others convicted of the same crime also lacks merit.  First, the Supreme Court concluded that comparative proportionality is not mandated by the Constitution.  *See Pulley v. Harris*, 465 U.S. 37, 43-45 (1984) (concluding that non-traditional proportionality review, which sought to require courts to assess "whether [a] penalty is . . . unacceptable in a particular case because [it is] disproportionate to the punishment imposed on others convicted of the same crime[,]" is not constitutionally mandated).  The Sixth Circuit has also ruled that comparative proportionality is not constitutionally mandated.  *See Buell v. Mitchell*, 274 F.3d 337, 368 (6th

-22-

(3:07-CV-03550)

Cir. 2001) (*citing Pulley*, 465 U.S. at 44-51); *Coe v. Bell*, 161 F.3d 320, 352 (6th Cir. 1998)

(*citing Pulley*, 465 U.S. at 44-45).  Second, as discussed previously, the trial court's decision to

impose consecutive sentences is discretionary post-*Foster*.  Moreover, Ohio's *Foster* remedy

does not violate due process and therefore is a valid sentencing scheme.  *See Smith*, 2008 WL

4758696 at *14; *McGhee*, 2008 WL 320763 at *11.  Accordingly, the trial court's imposition of

consecutive sentences for Thompson's criminal conduct is not contrary to, or an unreasonable

application of, clearly established Federal law as determined by the Supreme Court of the United

States.  Therefore, the Court is not persuaded that Thompson's sentence violates the Eighth

Amendment merely because it is greater than sentences imposed on others, who committed the

same or similar crimes, in different jurisdictions.

## V.  Conclusion and Recommendation

Having found that Thompson's Grounds for Relief are each without merit, the

undersigned recommends that the petition of Lawrence Thompson for a writ of habeas corpus be

dismissed in its entirety with prejudice.


  November 20, 2009                                         s/ *Benita Y. Pearson*
Date                                                                    United States Magistrate Judge


## OBJECTIONS

Objections to this Report and Recommendation must be filed with the Clerk of Courts
within ten (10) days of receipt of this notice.  Failure to file objections within the specified time
waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947
(6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111
(1986).